UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
CLABER VELASQUEZ, individually and on behalf of      :
others similarly situated                              :
:
Plaintiff,            :
:
-v-                   :
:
HEAVENLY FINEST DELI INC. (D/B/A HEAVENLY   :
FINEST DELI), and YOUSEF MEFLEH,             :
:
Defendants.           :
:
----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/1/2026___

25-cv-08542 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Claber Velasquez ("Plaintiff") brought this action against Defendant Heavenly Finest Deli Inc. ("HFD") and Yousef Mefleh ("Mefleh" and with HFD, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") of 1938, 28 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.*[1] Plaintiff now moves for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion for default judgment is granted in part and denied in part.

**FACTUAL BACKGROUND**

The following facts are drawn from Plaintiff's complaint and are accepted as true for purposes of this motion. Dkt. No. 1 ("Compl." or "Complaint").

Plaintiff worked at HFD from August 4, 2025, through September 3, 2025, as a delivery worker, stocker, cashier and kitchen assistant. *Id.* ¶¶ 5, 35.

---

[1] While Plaintiff bought the action as an FLSA collective action pursuant to 29 U.S.C. § 216(b), he requests damages only for himself in his motion for default judgment. Dkt. No. 1 ¶ 34; Dkt. No. 19.

Plaintiff typically worked six days each week, totaling approximately 54 hours. On three of those days, he worked for eight hours—from 7:00 a.m. until 3:00 p.m.; on three additional days, he worked for ten hours—from 7:00 a.m. until 5:00 p.m. *Id*. ¶ 42; Dkt. No. 21-1 ("Velasquez Decl.") ¶ 11.

Plaintiff received $13.00 per hour for both regular and overtime hours worked, except for during the pay period beginning on August 26, 2025, when Plaintiff did not receive pay for two days, totaling 18 hours of unpaid work. Dkt. No. 20-4; Compl. ¶ 43; Velasquez Decl. ¶ 14.

Plaintiff also alleges that Defendants never notified him, in English or in Spanish (his native language), of his rate of pay, his employer's regular pay day, or other information, as required under Section 195(1) of the NYLL. Compl. ¶¶ 54–55. He also alleges he was not given an accurate statement of wages, as required by Section 195(3). *Id.* ¶ 56.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on October 15, 2025. HFD was served on October 17, 2025, and Mefleh was served on October 20, 2025.[2] Dkt. Nos. 8–9. Neither Defendant responded. Plaintiff moved for a default judgment on January 27, 2026. Dkt. No. 19. The motion was served on both Defendants by first-class mail on January 27, 2026. Defendants did not respond. The Court ordered the parties to appear for a hearing on the motion for default judgment on February 27, 2026. No Defendant appeared at the hearing.

---

[2] The original affidavit of service filed with the Court relating to service on Mefleh incorrectly spelled his name as "Meffleh," but there is no indication the summons and complaint themselves contained any such error. Dkt. No. 9. An amended affidavit filed on January 7, 2026 includes the corrected spelling. Dkt. No 14.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2022); *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action."  *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations.").  Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

"The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at \*5 (S.D.N.Y. Mar. 27, 2019).  A default judgment entered on well-pleaded allegations does not reach the issue of damages, and plaintiffs "must therefore substantiate [their] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at \*15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).  And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

Plaintiff alleges six claims under the FLSA and NYLL: (1) violation of the minimum wage provisions of the FLSA, 29 U.S.C. § 203(d), Compl. ¶¶ 83–89; (2) violation of the overtime provisions of the FLSA, 29 U.S.C. § 207(a)(1), *id.* ¶¶ 90–93; (3) violation of the minimum wage provisions of the NYLL §§ 652, *id.* ¶¶ 94–98; (4) violation of the overtime provisions of the NYLL § 190 *et seq.*, *id.* ¶¶ 99–102; (5) violation of the wage notice requirement of NYLL § 195(1), *id.* ¶¶ 103–106; and (6) violation of the wage statement provision of NYLL § 195(3), *id.* ¶¶ 107–110.

The Court has reviewed the materials submitted by Plaintiff and his counsel in connection with the instant application and believes that a further inquest would be unnecessary, apart from requiring a renewed motion as to attorneys' fees and costs.

## I.    Liability

### A.    Applicability of the FLSA

As a delivery driver, stocker, cashier and kitchen assistant, Plaintiff qualifies as an employee under both FLSA § 203(e) ("[E]mployee means any individual employed by an employer.") and NYLL § 651(5) ("[A]ny individual employed or permitted to work by an employer in any occupation."). *See Hosseini v. Miilkiina* LLC, 2023 WL 7128092, at *3 (S.D.N.Y. Oct. 27, 2023); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 246 (E.D.N.Y. 2024).

The FLSA applies to employees who are either (1) "engaged in commerce or the production of goods for commerce," or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines an "enterprise," *inter alia*, as "the related activities performed . . . by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1); *see Cantey v. Ctr. for Emp. Opportunities*, 2026 WL 923844, at *4 (S.D.N.Y. Apr. 6, 2026). To qualify as an "enterprise engaged in commerce or in the production of goods for commerce," the employer must have (1) "employees engaged in commerce or in the production of goods for commerce" or "employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person;" and (2) an annual gross sales volume of at least $500,000.00. 29 U.S.C. § 203(s)(1)(A)(i–ii); see *Marcelino v. 374 Food, Inc.,* 2018 WL 1517205, at *10 (S.D.N.Y. Mar. 27, 2018).

"[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). To establish that workers handle goods or materials that have moved in interstate commerce, a plaintiff may specifically identify the goods that employees used in the course of their work. *Cantey*, 2026 WL 923844, at *7; *see e.g., Georges v. Detroit Pizza NYC LLC*, 2024 WL 1195727, at *4 (S.D.N.Y. Mar. 20, 2024) (plaintiffs sufficiently alleged engagement in interstate commerce where they alleged that employees worked with ingredients for restaurant dishes, soda, paper towels, and cleaning products). A court may also find that employees engaged in interstate commerce by inference through "the nature of the employer's business." *Cantey*, 2026 WL 923844, at *7 (internal quotation marks and citation omitted); *see, e.g., Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State.").

Plaintiff alleges that he "regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York," Compl. ¶ 39, and that "numerous items that were used in the deli on a daily basis are goods produced outside of the State of New York," *id.* ¶ 32. These allegations, in addition to the allegation that he worked at a "deli/grocery," *id.* ¶ 23, are sufficient to allege that the employees handled goods in interstate commerce. He further asserts that Defendants, both separately and jointly, had annual gross volume of sales exceeding $500,000.00 in 2025. *Id.* ¶ 31; *see Cantey*, 2026 WL 923844, at *8 ("[A] plaintiff can readily satisfy FLSA's gross-business requirement without providing specifics

as to yearly revenue." (citing cases)).  Accordingly, Plaintiff has established that the FLSA applies to his employment.

Plaintiff has additionally alleged that Defendants are employers under the FLSA and NYLL.  *See Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA.'" (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010))).  The Second Circuit applies an "economic reality" test to determine whether an employer-employee relationship exists.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013).  "When it comes to 'employer' status under the FLSA, control is key."  *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 205 (S.D.N.Y. 2014) (quoting *Lopez v. Acme Am. Envtl. Co., Inc.*, 2012 WL, at *3 (S.D.N.Y. Dec. 6, 2012)).  In assessing control, the Second Circuit considers whether the defendant (1) had the power to hire and fire the plaintiff, (2) supervised and controlled the plaintiff's work schedules or conditions of employment, (3) determined the plaintiff's rate and method of payment, and (4) maintained employment records.  *Irizarry*, 722 F.3d at 105.  The court must consider the totality of the circumstances, and no single factor is dispositive.  *Id.* at 106.  For individual liability, mere ownership or officer status is not sufficient on its own to demonstrate individual employer liability; rather, the individual must possess control over the company's actual operations "in a manner that relates to a plaintiff's employment," such as over "workplace conditions and operations, personnel, or compensation."  *Id.* at 109–10.

Plaintiff alleges facts supporting all four factors with regard to both HFN and Mefleh.  Plaintiff alleges that Mefleh determines the wages and compensation of HFN's employees, including Plaintiff, establishes the employees' schedules, maintains employee records, and has

the authority to hire and fire employees.  Compl. ¶ 22; *see also id.* ¶ 30 (similar allegations as to both Defendants).  He alleges that Defendants "possessed substantial control over" his working conditions, as well as the policies and practices respecting his and other employees' employment and compensation.  *Id.* ¶ 26; *see Cortez v. Brand Name 99 Cents & Up Corp.,* 2025 WL 1251297, at *4 (S.D.N.Y. Apr. 30, 2025) (plaintiff adequately alleged that defendant was an employer where alleged that defendant "maintained significant control over" working conditions and compensation); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 265 (defendant qualifies as an employer where he assigned work hours, informed employees of their pay, and could hire and fire employees).  Taken together, Defendants were each Plaintiff's employer under both the FLSA and NYLL.  *See Basurto v. Giants Deli Inc.*, 2026 WL 789516, at *6 (S.D.N.Y. Jan. 6, 2026) (individual defendant and corporate defendant each qualified as employers under the FLSA and NYLL where individual defendant controlled corporate defendant's functions, determined wages and compensation, and had the authority to hire and fire employees).

As Mefleh and HFD each qualify as employers under the FLSA and NYLL, they are considered joint employers and are jointly and severally liable for any damages award.  *Basurto*, 2026 WL 789516, at *6 (independent and corporate defendants are joint employers who are jointly and severally liable for any damages award); *see also Gomez Cruz v. Ding Feng Lin Constr. LLC*, 2025 WL 2933201, at *11 (E.D.N.Y. Aug. 25, 2025) (joint employers are jointly and severally liable under the FLSA); *Chen v. L&H Wine & Liquor, Inc.*, 2025 WL 733368, at *8 (S.D.N.Y. Mar. 7, 2025) (holding individual defendant jointly and severally liable where individual defendant was employer for purposes of NYLL).

B.       **Minimum Wage**

The FLSA and NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works.  29 U.S.C. § 206; NYLL § 652.  The FLSA requires employers to pay employees the federal minimum wage.  29 U.S.C. § 206(a)(1).  However, where the relevant state or locality's minimum wage is higher than the federal minimum wage, the employer must pay the higher minimum wage.  29 U.S.C. § 218(a) ("No provision of this chapter . . . shall excuse noncompliance with any . . . State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter").  For the entire relevant period, the federal minimum wage was $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and the New York City minimum wage was $16.50 per hour, NYLL § 652(1-a)(a).

Under both the FLSA and the NYLL, an employer may pay a tipped worker a cash wage that is lower than the statutory minimum wage, so long as the wage paid plus the employee's tips equals or exceeds the minimum wage.  *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 494 (S.D.N.Y. 2024).  "FLSA and the NYLL thus permit employers to take a 'tip credit' whereby a portion of employees' tips are used to offset the minimum wage and permit employers to pay less."  *Id.*  "However, both statutes provide that an employer is not entitled to apply a tip credit unless the employer meets certain conditions, including sufficient notice to the employee."  *Id.*; *see* 29 U.S.C. § 203(m)(2)(A)(ii).  "Th[e] notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit."  *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (internal quotation marks and citation omitted); *see Keawsri v. Ramen-Ya Inc*, 2021 WL 3540671, at *14 (S.D.N.Y. Aug. 10, 2021).  "[T]he burden is on the employer to show that they have complied with the tip credit requirements."  *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F.

Supp. 3d 219, 234 (S.D.N.Y. 2020), *report and recommendation adopted*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

Plaintiff alleges that he was employed as a delivery worker, for which he received tips, but that he spent over twenty percent of each day performing non-tipped work. Compl. ¶¶ 36–38. He alleges that he "was never notified by Defendants that his tips were being included as an offset for wages" and that Defendants did not account for tips received in any daily or weekly accounting of his wages. *Id*. ¶¶ 49–50; 68–70. Plaintiff has thus averred that Defendants did not provide the required notice that tips would be counted against his minimum wage. Accordingly, the Court will not apply a tip credit in determining the minimum wages due Plaintiff. *See Nguyen v. Pho Vietnam 87 Corp.*, 2025 WL 564546, at *11 (S.D.N.Y. Jan. 31, 2025) (not applying tip credit where plaintiffs averred that defendants did not provide requisite notice); *Najera v. Lake Ave Pizza, LLC*, 2023 WL 5752588, at *7 (S.D.N.Y. Aug. 3, 2023) (defendants ineligible for tip credit where "[plaintiff] alleges, and Defendants have admitted by their default, that they never notified him that tips would be included as an offset of his wages").

Plaintiff alleges that he was paid $13.00 per hour rather than the $16.50 per hour required by the NYLL. Compl. ¶ 44; Velasquez Decl. ¶ 13. He also alleges he was not paid at all for his final two days of work. Compl. ¶ 45; Velasquez Decl. ¶ 14. Therefore, Plaintiff sufficiently pleads that Defendants violated the NYLL's minimum wage provisions.

### C.    Overtime Wages

Both the FLSA and NYLL require employers to pay employees one-and-one-half times their regular rate of pay for hours worked over forty per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2; *see Hosseini*, 2023 WL 7128092, at *4. To state a claim for failure to pay overtime wages, plaintiff must allege that he worked over forty hours of work in a given

workweek.  *Id.* (citing *Herrera v. Comme des Garcons, Ltd.*, 2023 WL 6798604, at *4 (2d Cir. Oct. 16, 2023) (summary order)).

Plaintiff pleads sufficient factual information to establish that Defendants violated the FLSA and NYLL overtime requirements.  Plaintiff alleges that from approximately August 4, 2025, to September 3, 2025, Plaintiff worked from approximately 7:00 a.m. until 3:00 p.m. three days a week and from approximately 7:00 a.m. until 5:00 p.m. three days a week, which amounts to 54 hours per week.  Compl. ¶ 42.  He further alleges that he was paid his regular rate of $13.00 per hour for all hours worked, including those he "regularly" worked beyond forty hours each week.  *Id*. ¶ 41.  Therefore, Defendants "straightforwardly violated the FLSA and New York overtime requirements."  *Castillo v. Isakov*, 2023 WL 6664552, at *4 (S.D.N.Y. Oct. 12, 2023); *see Hosseini*, 2023 WL 7128092, at *4 (plaintiff adequately alleged violation where he alleged that he worked at least 50 hours for each week of February 2021); *Maldonado Juarez v. Butterfield Catering Inc.*, 2020 WL 6945944, at *2 (S.D.N.Y. Nov. 25, 2020) (plaintiff adequately alleged violation where he detailed his hours of 4:00 a.m. to 2:00 p.m. five days a week).

> ### D.        Wage Notice and Wage Statement Violations

Plaintiff also seeks a default judgment against Defendants on his wage notice and wage statement claims under New York law.  Before the Court may proceed to the merits of Plaintiffs' claim, the Court must determine that Plaintiff has standing, including that he has demonstrated "concrete and particularized" injury-in-fact.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The Second Circuit has addressed the pleadings a plaintiff must make to establish Article III standing for NYLL wage notice and wage statement claims.  *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024).  A plaintiff does not have Article III standing purely by

pointing to "technical violations of the [NYLL]." *Id*. at 305. The fact that the Wage Theft Prevention Act "grants a person a statutory right and purports to authorize that person to sue to vindicate that right" alone does not give an employee the right to pursue that claim in federal court. *Id*. Rather, the plaintiff must "show some causal connection between the lack of accurate notices and [a] downstream harm," such as an impaired ability to seek relief for wage violations about which they may not have information or a lack of proper documentation to apply for public benefits. *Id*. at 308–09. The plaintiff must plausibly allege "how he was injured by [the] defendants' failure to provide the required documents" and may not rely on "speculation and conjecture." *Id*. at 309 (citation omitted); see also *id*. at 308 ("[U]nless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195."). Nevertheless, "[a] plaintiff need not . . . establish an injury that is greater than or different from the loss of wages or overtime pay alleged in their lawsuit." *Lock v. Costco Wholesale Corp.*, 2024 WL 4728594, at *4 (E.D.N.Y. Nov. 8, 2024) (citing *Guthrie*, 113 F.4th at 309).

Following *Guthrie*, courts in this Circuit "are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'" *Roma v. David Carmili, Physician, P.C.*, 2024 WL 5152211, at *5–6 (E.D.N.Y. Dec. 18, 2024) (quoting *Freeland v. Findlay's Tall Timbers Distrib. Center, LLC*, 2024 WL 4652251, at *2 (W.D.N.Y.

Nov. 1, 2024), *appeal dismissed*, 2024 WL 5445327 (2d Cir. Dec. 27, 2024)); *accord Romero v. Garner Env'tl Servs., Inc.*, 2025 WL 3638397, at *7 (S.D.N.Y. Dec. 16, 2025).

Plaintiff alleges that Defendants' failure to provide wage notices and accurate wage statements prevented him from "comparing his rate of pay to his hours worked" and "realizing that he was underpaid," and therefore taking "appropriate action" to remedy those violations. Compl. ¶ 56.  These allegations suffice to plausibly allege a causal connection between the alleged violations of the NYLL and the injuries that Plaintiff has suffered.  *See Ortiz v. Consol. Edison Co. of N.Y., Inc.*, 801 F. Supp. 3d 260, 328 (S.D.N.Y. 2025) (allegations that defendants' failure to provide wage notice and statements prevented plaintiffs from realizing their hours worked, that they were underpaid, and from taking appropriate action to obtain the payments due to them, sufficed as "ple[ading] a causal connection"); *Romero*, 2025 WL 3638397, at *7; *see also Lipstein v. 20X Hosp. LLC,* 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (same). Therefore, Plaintiff has adequately established standing for his wage notice and wage statement claims under the NYLL.

Plaintiff has further adequately alleged that Defendants violated NYLL's wage notice and wage statement provisions.  Under the NYLL, employers must furnish wage notices to their employees that disclose their rate of pay, NYLL § 195(1)(a), and must furnish wage statements that describe, *inter alia*, the dates of work covered, the applicable rates of pay, and relevant deductions and allowances, *id.* § 195(3).  *See Cortez*, 2025 WL 1251297, at *6.  Plaintiff alleges that Defendants failed to post or otherwise provide to employees notices regarding the applicable wage and hour requirements of the FLSA and NYLL, Compl. ¶ 73, and failed to provide Plaintiff with accurate wage statements at the time of their payment that included dates of work, name of employee, name of employer, rate or rates of pay and basis thereof, the number of regular hours

worked, and the number of overtime hours worked, *id.* ¶ 77.  Consequently, Defendant violated the NYLL's wage notice and wage statement provisions.  *See Cortez*, 2025 WL 1251297, at *6; *Hosseini*, 2023 WL 7128092, at *4.

## II.    Damages

### A.    Minimum Wage and Overtime

An employee who brings an action under the FLSA or the NYLL for unpaid wages must prove that he performed the work and was not compensated properly for his time.  *See Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003).  While the FLSA requires an employer to "make, keep, and preserve" records of employee wages, hours, and employment conditions, 29 U.S.C. § 211(c),"[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only . . . submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may reasonably be inferred.'"  *Gonzalez v. Masters Health Food Serv. Inc.*, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (alteration in original) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).

If an employee makes this showing, "[t]he burden then shifts to the employer to come forward [i] with evidence of the precise amount of work performed or [ii] with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (first alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)).  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Id.* (quoting *Kuebel*, 643 F.3d at 362).

"A similar standard applies to unpaid compensation claims under [the] NYLL." *Gonzalez*, 2017 WL 3835960, at *16; *see also Garcia v. JonJon Deli Grocery Corp.*, 2015 WL

4940107, at *4 n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework [as in the FLSA] to determine liability for unpaid overtime under the NYLL.").  But under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof.  "NYLL § 196-a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'"  *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting N.Y. Lab. Law § 196-a(a)); *see also generally Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017).  The NYLL requires an employer to establish such payment by a preponderance of the evidence.  N.Y. Lab. Law § 196-a(a); *see also Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *36 (S.D.N.Y. June 9, 2016).  And "[i]f an employer cannot satisfy its burden under the FLSA, it cannot satisfy th[is] 'more demanding burden' of the NYLL."  *Canelas*, 2017 WL 1233998, at *9 (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005)).  Even if an employer is liable under both statutes, a plaintiff may only recover damages under either the FLSA or NYLL.  *See Hernandez*, 2016 WL 3248493, at *31.

Here, Defendants failed to defend against this action and did not provide Plaintiff with pay records.  Instead, Plaintiff has submitted a sworn statement attesting to the number of hours worked per week along with his hourly pay.  Velasquez Decl. ¶¶ 11–15; Dkt. No. 22-4.  The Court accepts these estimates.  *See Cortez*, 2025 WL 1251297, at *7 (accepting plaintiff's sworn declaration of best estimates of days and hours worked); *Teofilo v. Real Thai Cuisine Inc.*, 2021 WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021) (accepting sworn estimates after discovery where pay records did not reflect days or hours worked).

To calculate the unpaid minimum and overtime wages, the Court determines the difference between what Plaintiff should have been paid under the NYLL and what he was actually paid. Plaintiff alleges that his standard wage was below the minimum wage. His standard pay for a forty-hour workweek should therefore have been $16.50 per hour, the minimum wage under the NYLL. NYLL § 652(1-a)(a). For any hours worked beyond that, the Court applies the applicable overtime rate, which is one and a half times the applicable wage; in this case the applicable wage is $16.50 per hour, making the overtime rate $24.75. *See Nana v. Le Viking LLC*, 2019 WL 3244181, at *3 (S.D.N.Y. July 19, 2019), *report and recommendation adopted,* (Oct. 28, 2019) (where the employee has been paid below the minimum wage, "the appropriate overtime rate [is] one-and-a-half times the minimum wage rate."). As outlined below, the Court finds that Plaintiff is owed $1,451.82 in back wages.[3][4]

| Pay Period | Weeks | Hours per week | Actual Weekly Pay | Weekly pay required by NYLL | Weekly Pay Owed | Total Pay Owed |
|---|---|---|---|---|---|---|
| 8/4/2025 to 8/25/2025 | 3 | 54 | $702 | $1,006.50 | $304.5 | $913.50 |

[3] Plaintiff alleges in his initial complaint that for the three days each week in which he worked until 5 p.m. rather than 3 p.m., defendants "did not pay him for the additional time he worked" and that his "pay did not vary" based on how long he worked each day. Compl. ¶ 46–47. However, in the "Damages Table" provided by Plaintiff, he alleges receiving $13.00 per hour for these additional hours. Dkt. No. 20-4. Therefore, the Court assumes that he was, in fact, paid for those hours.

[4] The Court does not need to consider Plaintiff's allegation that the employers' violations were willful, since such a finding would not have an effect on the liability or damages awarded. *See e.g., Azeez v. Ramaiah*, 2015 WL 1637871, at *6 n.9 (S.D.N.Y. Apr. 9, 2015). The applicable statute of limitations under the FLSA, absent willfulness, is two years. 29 U.S.C. § 255(a). All of the violations alleged here occurred in 2025, within the two-year window. Moreover, the NYLL has a six-year statute of limitations. NYLL § 663(3).

| 8/26/2025 to 9/3/2025 | 1 | 54 | $468.18 | $1,006.50 | $538.32 | $538.32 |
|---|---|---|---|---|---|---|
| | | | | | | $1,451.82 |

### B.    Liquidated Damages

Under Section 663 of the NYLL, Plaintiff is also entitled to liquidated damages "equal to one hundred percent of such underpayments found to be due," in the absence of a defense showing of "a good faith basis to believe that its underpayment of wages was in compliance with the law." *Rana v. Islam*, 887 F.3d 118, 122–23 (2d Cir. 2018).  To present this defense, the employer must demonstrate that it "took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).  The employer must also show that its good-faith actions were objectively reasonable.  *RSR*, 172 F.3d at 142–43.  Even where a defendant employer has appeared in the action, the Second Circuit has observed that "the employer's burden [is] 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception.'" *Barfield*, 537 F.3d at 150 (quoting *RSR*, 172 F.3d at 142).  Defendants have not appeared in this action or presented such a defense. Accordingly, Plaintiff is entitled to a liquidated damages award in the amount of 100% of back wages, or $1,451.82.  *See Cortez*, 2025 WL 1251297, at *8 (awarding liquidated damages where defendant did not appear); *Jimenez*, 744 F. Supp. 3d at 255 (same).

### C.    Statutory Damages

The NYLL requires employers to provide wage notices to employees at the time of hiring and to issue accurate wage statements at the time wages are paid.  *See* NYLL §§ 195(1)(a), (3); 12 N.Y.C.R.R. § 142-2.4.  The Court has found that Defendants failed to provide him with wage

notices or accurate wage statements, and that Plaintiff has standing to pursue both claims.  *See supra* I.D; Compl. ¶¶ 56, 105.

NYLL § 198(1-b) entitles employees to recover wage-notice statutory damages of $50 "for each work day that the violations occurred or continue to occur," with a maximum of $5,000.  NYLL § 198(1-b).  NYLL § 198(1-d) entitles employees to recover wage-statement statutory damages of $250 "for each work day that the violations occurred or continue to occur," also capped at $5,000.  NYLL § 198(1-d); *see Zurita v. 3275 Chicken Corp.*, 2026 WL 636853, at *5 (S.D.N.Y. Mar. 6, 2026).

Defendants failed to provide Plaintiff with the required wage notice and wage statements for approximately 24 work days.  Compl. ¶ 42; Dkt. No. 20-4 (noting that Plaintiff worked six days a week for four weeks); *see Hristova v. 3321 Astoria Inc.*, 2018 WL 4006880, at *6 n.2. (E.D.N.Y. June 27, 2018) ("Although the NYLL does not provide a precise definition of 'work day,' courts in this Circuit regularly calculate NYLL statutory damages by defining a 'work day' as a day that the employee actually worked.").  Accordingly, he is entitled to a $1,200 award for violations of NYLL § 195(1).  Additionally, since "Defendants failed to provide Plaintiff[] with the . . . required wage statements for more than twenty days," he is entitled to "the maximum statutory damage award of . . . $5,000 for violations of NYLL § 195(3)."  *Diaz v. Rene French Cleaners, Inc.*, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022); *see also Hosseini*, 2023 WL 7128092, at *7; *Ayala v. P&N Cuisine Inc.*, 2022 WL 3327544, at *4 (S.D.N.Y. July 13, 2022); *Khan v. AC Auto., Inc.*, 2021 WL 2036706, at *4 (S.D.N.Y. May 21, 2021).  Plaintiff is thus entitled to a total of $6,200 in statutory damages.

**D.    Pre- and post-judgment Interest**

Employees may recover prejudgment interest with respect to their back wages, but not with respect to liquidated damages or violations of the wage statement or wage notice provisions.

NYLL § 198(1-a); *see Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017); *Maldonado v. La Nueva Rampa, Inc.,* 2012 WL 1669341, at *10 (S.D.N.Y May 14, 2012).  The statutory rate of interest is nine percent per year.  N.Y.C.P.L.R. § 5004(a); *see Gomez v. NYHS Design Inc.*, 2022 WL 4284143, *7 (S.D.N.Y. Sept. 16, 2022).  To determine when prejudgment interest begins to accrue, courts in NYLL cases often choose the midpoint of the plaintiff's employment within the statute of limitations period.  *See Tackie v. Keff Enters. LLC*, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014); N.Y.C.P.L.R. § 5001(b).  The damages are calculated "until the date judgment is entered."  *Gomez*, 2022 WL 4284143, at *8.

Here, the reasonable midpoint of plaintiff's employment is August 19, 2025.  "Simple prejudgment interest is calculated by multiplying the principal by the interest rate by the time period-from a singular, midpoint date-up until and including the date judgment is entered."  *Maldonado*, 2012 WL 1669341, at *11.  Accordingly, the Court will award prejudgment interest on Plaintiff's award of back wages, $1,451.82, starting from August 19, 2025, the midpoint of Plaintiff's employment.

Plaintiff additionally sought post-judgment interest in his complaint.  Compl. at 19.  28 U.S.C. § 1961 "ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered."  *Cortez*, 2025 WL 1251297, at *9 (quoting *Campos Marin v. J&B 693 Corp.*, 2022 WL 377974, at *13 (S.D.N.Y. Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022)).  The Second Circuit has also stated that "an award of post-judgment interest is mandatory."  *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008).  Plaintiff is therefore entitled to post-judgment interest, which shall accrue from entry of judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

E. **Judgment Unpaid Within 90 Days**

Plaintiff also requests that the damages order include a provision automatically increasing the judgment by the amount outlined in NYLL § 198(4). *See, e.g., Pena v. Metro. Wireless Anandpur Inc.*, 2021 WL 5054368, at *4 (S.D.N.Y. Nov. 1, 2021). The NYLL provides that:

> Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

NYLL § 198(4). Accordingly, if any part of the judgment is unpaid at the expiration of ninety days, and no appeal is pending at that time, the judgment shall provide that it is increased by 15 percent.

## III. Attorneys' Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Almanzar v. 1342 St. Nicholas Avenue Rest. Corp.*, 2016 WL 8650464, at *12 (S.D.N.Y. Nov. 7, 2016) (quoting *Najnin v. Dollar Mountain, Inc.*, 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015)); *see* 29 U.S.C. § 216(b); NYLL § 198(1-a). The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008), and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees

bears the burden of demonstrating that its requested hours and hourly rates are reasonable, *see Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011), and must provide the court with sufficient information to assess the fee application, *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

The court's focus is "on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill*, 522 F.3d at 189. The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind that the "paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, the court reduces the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable. The court "should exclude excessive, redundant[,] or otherwise unnecessary hours[.]" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see generally Murray v. UBS Sec.*, 2020 WL 7384722, at *11–12 (S.D.N.Y. Dec. 16, 2020).

The Court has reviewed the submissions of Plaintiff's counsel documenting the hours worked and the activities performed in support of this action. Dkt. No. 20-5. Counsel requests reimbursement at a rate of $450 per hour for 5.6 hours of work performed by "MF," presumably attorney Michael Faillace ("Faillace"). However, a different attorney, Robert Jun ("Jun"), appeared in this Court representing Plaintiff and submitted multiple filings on behalf of Plaintiff. *See, e.g.,* Feb. 27, 2026 Minute Entry (noting Jun's appearance on behalf of Plaintiff at default judgment hearing). Jun has significantly less experience and would accordingly be eligible for a significantly lower reimbursement rate. *See Lee v. Mani & Pedi Inc.*, 2022 WL 3645118, at *4 (finding that "Courts within the Southern District of New York award fees for rates between

$250.00 and $450.00 per hour in FLSA cases, deeming the upper range appropriate for the most experienced FLSA litigators).  In fact, despite signing the memorandum of law in support of the motion for default judgment, Jun is not mentioned in the memorandum's section outlining "each attorney who performed billable hours in the matter," for which only Faillace and unnamed "paralegals" are mentioned.  Dkt. No. 21.  Plaintiff's counsel reports—in addition to "MF"—that an individual with the initials "KR" performed 1 hour of work at the paralegal rate, preparing documents and filing the complaint, as did "PL" (presumably one or multiple paralegals) for approximately 3.4 additional hours.  Plaintiff's counsel has provided no information regarding "KR."

Plaintiff's submission does not permit the Court to determine whether the rate or hours worked by Plaintiff's counsel is reasonable, or whether the requested fees accurately reflect the work performed on this case.  Accordingly, the request for attorneys' fees and costs is denied without prejudice.  Plaintiff may submit a motion under Federal Rule of Civil Procedure 54(d)(2) for attorneys' fees and costs.  The motion should clearly and accurately state the activities of each attorney who worked on the matter, with hourly rates reflecting their respective experience and should be accompanied by contemporaneous time records.  *See Strauss v. Little Fish Corp.*, 2020 WL 4041511, at *9 (S.D.N.Y. July 17, 2020) (requiring contemporaneous time records in context of *Cheeks* hearing).[5]

## CONCLUSION

Plaintiff's motion for default judgment is GRANTED in part and DENIED in part. Plaintiff is entitled to relief on his claims for back wages, liquidated damages, and wage notice

---

[5] This Court and others have found that Mr. Faillace's charged rate of $450 is "excessive" and capped it at $400 per hour.  *Gautier v. 3 Way Rest., Inc.,* 2025 WL 2807124, at *10 (S.D.N.Y. May 8, 2025); *Hernandez v. Vill. Nat. Rest. Corp.*, 2020 WL 5518314, at *1 (S.D.N.Y. Sept. 14, 2020).

and wage statement violations.  Plaintiff's request for attorneys' fees and costs is denied without prejudice to a motion under Rule 54(d)(2).

The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff and awarding damages as follows:

- $1,451.82 in back wages under the NYLL, with 9% prejudgment interest accruing from August 19, 2025;

- $1,451.82 in liquidated damages;

- $1200 for Defendants' violation of NYLL § 195(1), and $5,000 for Defendants' violation of NYLL § 195(3); and

- Post-judgment interest pursuant to 28 U.S.C. § 1961.

The Court's judgment should also provide that "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4).

The Court directs Plaintiff to transmit a copy of this Opinion and Order to Defendants through any means they have previously used to communicate with Defendants.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: July 1, 2026
New York, New York

_____
LEWIS J. LIMAN
United States District Judge